

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CIVIL ACTION NO. 11-2169 |
| v. | * | SECTION: SECT. N MAG 3 |
| $53,263 U.S. CURRENCY | * | |
| * * * | | |

### COMPLAINT FOR FORFEITURE IN REM

**COMES NOW** the United States of America, by and through the undersigned Assistant United States Attorney, and respectfully avers and alleges to this Court as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

1.

This Honorable Court has jurisdiction pursuant to Title 28, United States Code, Sections 1345 and 1355.

2.

Venue is proper within this judicial district pursuant to Title 28, United States Code, Sections 1355 and 1395.

**3.**

The plaintiff is the United States of America, a sovereign nation authorized to sue.

**4.**

The defendant is: $53,263 U.S. Currency, which was seized on or about March 29, 2011, at 14680 Kraft Lane, Pontchatoula, Louisiana 70454. The defendant sum is comprised of two smaller sums of currency, $52,200.00 and $1,063.00, which were found in two separate locations and which are more fully described in the accompanying affidavit of DEA Task Force Agent Karl Newman. See Exhibit "A."

**5.**

This cause of action arises pursuant to Title 21, United States Code, Section 881 et seq.

**6.**

Defendant property is money furnished or intended to be furnished by any person in exchange for controlled substances, or is proceeds traceable to such an exchange of controlled substances, and is, therefore, subject to seizure and forfeiture to the United States pursuant to Title 21, United States Code, Section 881(a)(6), all as more particularly set forth in the attached affidavit of Task Force Agent Karl Newman, Drug Enforcement Administration (DEA), marked Exhibit A and by this reference fully incorporated herein.

**7.**

By reason of the foregoing and Title 21, United States Code, Sections 881(a)(6) and 881(h), the defendant, $53,263 U.S. Currency, has become and is forfeited to the United States of America. The instant <u>in Rem</u> proceeding has been initiated, seeking recognition of same.

**WHEREFORE**, plaintiff, United States of America prays:

1. That due process issue to enforce the forfeiture and to give notice to interested parties to appear and show cause why the forfeiture should not be decreed;

2. That the defendant, $53,263 U.S. Currency, be condemned and forfeited to the United States of America to be disposed of in accordance with law; and

3. That this Court grant such other further relief that it may deem just and proper.

                         Respectfully submitted,

                         JIM LETTEN
                         UNITED STATES ATTORNEY

                         /s/ Andre J. Lagarde
                         ANDRE J. LAGARDE, T.A.
                         Assistant United States Attorney
                         650 Poydras Street, Suite 1600
                         New Orleans, LA   70130
                         Telephone: (504) 680-3009
                         La. Bar Roll No. 28649
                         Andre.Lagarde@usdoj.gov

PLEASE ISSUE AND SERVE
WARRANT OF ARREST ON:

$53,263 U.S. CURRENCY

Located at:
Drug Enforcement Administration
3800 N. Causeway Blvd.
Suite 1800
Three Lakeway Center
Metairie, LA   70002

## **VERIFICATION**

I, Karl Newman, hereby verify and declare under penalty of perjury that I am a Task Force Agent with the United States Drug Enforcement Administration, that I have read the foregoing Verified Complaint in Rem and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Task Force Agent with the United States Drug Enforcement Administration.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated this 30 of August, 2011.

_____
KARL NEWMAN, TASK FORCE AGENT
Drug Enforcement Administration

```
STATE OF LOUISIANA                    )
                                      ) AFFIDAVIT OF KARL NEWMAN
Parish of Orleans                     )
```

I, Karl Newman, being duly sworn, depose and state the following:

I am a Task Force Agent with the Drug Enforcement Administration, U.S. Department of Justice, and, as such, am empowered by Title 21, United States Code, Section 878, to make arrests and to obtain and to execute search warrants. I am currently assigned to Task Force Group 10 in the New Orleans Field Division. I have been employed by the Tangipahoa Parish Sheriff's Office in excess of seven years. During the course of my employment with the Tangipahoa Parish Sheriff's Office, I have participated in numerous drug trafficking investigations and have received extensive training in drug trafficking and drug trafficking investigations. I have testified in judicial proceedings and prosecutions for violations of State and Federal laws concerning controlled substances. I make this affidavit based on my own personal observations concerning this investigation, the observations of other agents and sworn law enforcement officers, and the statements of the accused.

The facts outlined below offered in support of this complaint are based upon the knowledge and information relayed to me by other investigating agents of the Tangipahoa Parish Sheriff's Office.

1. On March 29, 2011, Agents of the Tangipahoa Parish Sheriff's Office (TPSO) Narcotics Division began an investigation of the drug trafficking activities of James and Anita LANDRUM and associates.

2. On the evening of March 29, 2011 at approximately 6:40 p.m., Agent Heath Martin received an alert notification via the National Precursor Log Exchange ("NPLEx") pseudoephedrine monitoring systems, for a purchase of pseudoephedrine by Nancy WALL. Nancy WALL is a suspect related to methamphetamine investigations and has been placed on a watch list through the NPLEx system, due to numerous purchases of pseudoephedrine.

AFFIDAVIT OF KARL NEWMAN -- PAGE 1

3. Agent Martin utilized the NPLEx system to check the purchasing reports of the Walgreen store #09690 located in Ponchatoula, Louisiana, which is the location that triggered the NPLEx system alert, alerting Agent Martin to WALL's pseudoephedrine purchase. During his search of the purchasing reports, Agent Martin noticed that the preceding purchaser was James S. Landrum, who made his purchase at approximately 6:18 p.m. on the 29th of March 2011. LANDRUM's residence is within approximately 2 and ½ miles from the residence of WALL, who resides with Michael HUSZAR. WALL and HUSZAR'S residence is located at 14010 Wadesboro road Ponchatoula, Louisiana 70454.

4. Tri-Parish Agents traveled to the residence of WALL/HUSZAR to conduct an investigation related to the information received, as well as the frequent purchasing of pseudoephedrine. Upon arrival, Agents received no response to their knocking and further observed that neither suspect's vehicle was present. After checking this location, Agents traveled to LANDRUM's residence.

5. Upon arriving at LANDRUM'S residence, Agents discovered HUSZAR'S vehicle parked in the driveway. As Agent Heath Martin approached the door of the residence, he detected the distinctive odor created through the methamphetamine manufacturing process. Agent Martin also heard the voices of multiple individuals just within the door of the residence. Agent Jimmy Speyrer, standing next to Agent Martin, also detected the odors of methamphetamine manufacturing.

6. After Agent Martin knocked upon the door of the residence, James LANDRUM opened the door and greeted the agents. When the door was opened, the chemical odors, which were venting from within the residence, became pungent. Agent Martin requested that James LANDRUM allow the agents to enter the residence, as it was raining at the time. LANDRUM opened the door and allowed Agents to enter. Upon entering the residence, the agents observed that Michael HUSZAR, Nancy WALL, and Anita LANDRUM were all in the kitchen area. Due to the impending questioning of the suspects, Agent Martin provided the suspects with Miranda warnings and asked each suspect to confirm that he/she understood his/her rights as they pertain to Miranda. Agent Martin requested to speak to WALL and openly

AFFIDAVIT OF KARL NEWMAN -- PAGE 2

asked if there were any other persons within the residence. All of the suspects answered no and James LANDRUM stated, "You can look and see," providing consent to check the residence for additional suspects.

7. Agent Martin and WALL exited the residence and stood just outside the door. Agent Martin provided WALL with <u>Miranda</u> warnings and questioned WALL as to her knowledge of methamphetamine manufacturing believed to be occurring at the residence. WALL hung her head and nodded yes, then stated, "It's in there." As Agent Martin was speaking to WALL, Agent Crag Fitz opened the door and advised Agent Martin that, while checking the residence for additional suspects, Agent Fitz had discovered a hydrogen chloride generator and a one pot methamphetamine lab on the floor of the rear enclosed porch. The items were in plain view and chemically active.

8. Agent Martin requested to speak to James LANDRUM in order to inform LANDRUM that Agent Martin would be preparing a probable cause affidavit for a search warrant for the LANDRUM'S residence. LANDRUM advised Agent Martin he understood and would cooperate fully and, then, apologized for what he had done. After this statement from LANDRUM, Agent Martin asked LANDRUM if he would be willing to provide written consent to search the residence instead of having a judge ordered search warrant. LANDRUM again stated he would cooperate fully stating, "That won't change anything, y'all got me." Agent Martin retrieved a standard permission to search form and reviewed the form with LANDRUM. LANDRUM followed along as Agent Martin informed him of his rights as they pertain to the waiver of a search warrant. After advising that he understood, Agent Speyer witnessed LANDRUM sign the form, providing consent to search the residence.

9. Upon reentering the residence, James LANDRUM openly stated, "I've provided consent to search the residence and I'm going to cooperate with them." Agent Martin was escorted to the area where Agent FITZ had observed the methamphetamine laboratory. Agent Martin viewed the items discovered and further observed: a hydrogen chloride generator producing hydrogen chloride gas, a one gallon container utilized as a reaction vessel for

AFFIDAVIT OF KARL NEWMAN -- PAGE 3

manufacturing methamphetamine, a large glass jar that was filled partially with water and had a large clear plastic zip lock bag floating, which contained suspected meth oil, and assorted precursory materials utilized in manufacturing methamphetamine. Due to the nature of the chemicals utilized in methamphetamine manufacturing, Agent Martin notified Extreme Cleaners to respond to the scene for disposal of hazardous and contaminated materials.

10. Following notification for clean up, Agents began to search the residence. On the kitchen table. Agent Martin collected as evidence, a small unlabeled prescription pill bottle containing numerous prescription pills. Also on the table was a small plastic bag that was tied in a knot and that was contained methamphetamine.

11. A digital scale and a clear plastic bag containing methamphetamine lay on the bed in the master bedroom. Within approximately one foot from the scale and methamphetamine was a loaded Charter Arms Corp .357 Magnum Bulldog serial # 400465. Additionally, just prior to entering the master bathroom, , agents found and seized a container of Coleman camp fuel from its location on the floor.

12. Within the master bathroom, the following items of evidence were seized: one container of Roebic crystal drain cleaner, one ammo container with assorted forms of paraphernalia, pill crush, scale weights, small storage containers, and packaging materials. Within the bathroom garbage container were eight (8) empty boxes of pseudoephedrine, filtering materials, battery strippings, empty blister packaging for pseudoephedrine pills. On the bathroom counter top were: cutting pliers, latex gloves, a container of hydrogen peroxide, a plastic container with marijuana and rolling papers, pieces of aluminum foil containing methamphetamine, clear plastic zip lock bags containing methamphetamine, cut plastic straws, a felt case with a bowl meth pipe, a clear plastic zip lock bag containing 10 pills of lortab, and James LANDRUM'S wallet, which contained a Walgreens receipt that documented the purchase of pseudoephedrine.

13. In the master bathroom closet, agents found a gun cabinet, containing a loaded AMT .380 9mm KURZ handgun serial # R12855 and

a SKS with Eurolux 4x25 scope serial #11010749P, on the left side of the door. On top of the gun cabinet were two unlabeled prescription pill bottles. One bottle contained 16 pills marked DAN 5513, and the other contained 7 ½ pills marked Mylan 477. Agents also found in that same closet: one roll of Reynolds Wrap aluminum foil, ammunition, coffee filters, a digital scale and a prescription pill bottle prescribed to Joseph Saltzman for Alprazolam 1mg tab, torches, and glass bowl meth pipes. Hung within the cloths was a blue jean shirt. Agents found a clear plastic bag containing methamphetamine and a folded piece of foil containing methamphetamine in the pocket of the blue jean shirt.

14. On the right side of the master bathroom closet was a fire box safe. Just below the safe were precursory materials: one container of hydrogen peroxide, one box of salt, coffee filter, latex gloves and zip lock bags. Agent Martin retrieved the keys for the fire box from a key ring on the kitchen table. The box was opened to reveal a large amount of U.S. currency within a green zipper bag. The currency found in the fire box safe was later counted and verified to be a total sum of $52,200.00. Under the fire box was a small blender that appeared to have been used to grind marijuana.

15. During booking, Anita LANDRUM provided Agent Martin with glass bowl meth pipes and a small piece of aluminum foil, which contained a small amount of methamphetamine. Agent Martin asked if there were any other large amounts of U.S. currency. Anita LANDRUM advised she had around $1,000.00 of cash in her purse. Mrs. LANDRUM stated she had removed a couple thousand dollars of the money from the lock box and had been shopping. Both suspects when asked about employment advised they did not work. The total sum of money seized from Anita LANDRUM'S purse was $1063.00 U.S. currency.

16. Agent Martin questioned HUSZAR about whether he had purchased pseudoephedrine for the purpose of manufacturing methamphetamine, but HUSZAR quickly stated that he did not know how to manufacture. "I use it to keep me going," HUSZAR stated. Agent Martin questioned WALL, seeking her admission to having purchased pseudoephedrine for the purpose of manufacturing methamphetamine; but she also denied knowing how to manufacture.

AFFIDAVIT OF KARL NEWMAN -- PAGE 5

17. Anita LANDRUM admitted that she had purchased pseudoephedrine for the purpose of methamphetamine manufacturing. James LANDRUM also admitted he had purchased pseudoephedrine for the purpose of manufacturing; and he further stated he had personally manufactured methamphetamine. James LANDRUM explained that, because he had not been employed since performing Hurricane Katrina clean-up, he both used methamphetamine sold methamphetamine and prescription medication as a way to generate income. The LANDRUMs stated that they had continued to receive prescription medication prescribed to Joseph Saltzman, the father of Anita LANDRUM, after his death. James LANDRUM admitted that both he and Anita LANDRUM had been consuming and selling these prescriptions sent to Mr. Saltzman by the Bureau of Veteran Affairs. This admission was consistent with physical evidence, including the prescription pill that was located in the master bedroom closet, found and seized earlier in the search.

18. The four individuals discussed herein, Anita LANDRUM, James LANDRUM, Nancy WALL, and Michael HUSZAR, were arrested on State charges, which are still pending in the Parish of Tangipahoa, State of Louisiana.

AFFIDAVIT OF KARL NEWMAN -- PAGE 6

19. Based on the foregoing facts, your affiant believes and avers that the defendant $53,263.00 in United States Currency is money which was intended to be used to purchase items to manufacture a controlled substance, or which were proceeds from the sale of a controlled substance, and is, therefore, forfeitable pursuant to Title 21, United States Code, Section 881(a)(6).

_____
Karl Newman, TASK FORCE AGENT
Drug Enforcement Administration

Sworn to and subscribed before me this _30th_ Day of August, 2011.

_____
NOTARY PUBLIC
ARIANA J. NEWMAN
La. I.D. No. 65433
My commission expires at: _death_

AFFIDAVIT OF KARL NEWMAN -- PAGE 7